UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNION SECURITY INSURANCE CO.,

Plaintiff,

v.

Case Number 11-10858
Honorable Thomas L. Ludington

JOANN ALEXANDER,

Defendant/Cross-Claim Plaintiff,

v.

ESTATE OF FARON ALEXANDER,

Defendant/Cross-Claim Defendant.
______________________________________/

**OPINION AND ORDER AND ORDER GRANTING ESTATE OF FARON ALEXANDER'S MOTION FOR SUMMARY JUDGMENT**

This case arises out of the death of Faron Alexander and concerns which party is entitled to his life insurance policy proceeds —his spouse, the named beneficiary who waived her rights in the policy in a judgment of separate maintenance entered one month before the decedent's death, or his estate. Adding another layer of complexity to the question, in the month between the entry of judgment of separate maintenance and the gentleman's death, he purportedly told at least three individuals that he intended his spouse to receive the funds.

The insurer, Plaintiff Union Security Insurance Co., has filed an interpleader action in this Court against the competing claimants, Defendant Linda Sokol, the personal representative of the decedent's estate (and his mother), and Defendant JoAnn Alexander, the decedent's spouse. The estate now moves for summary judgment, contending that it is entitled to the funds. ECF No. 17. Conceding that the funds must initially be paid to the spouse as the policy's named

beneficiary, the estate seeks a judicial determination that once the proceeds are distributed, the spouse must then relinquish the funds to the estate. For the reasons which follow, the Court will grant the estate's motion.

**I.**

Faron Alexander, now deceased, was formerly an employee of Cole Carbide Industries. Incident to his employment, the decedent was a participant in a group term life insurance policy offered by his employer and issued by Plaintiff. This policy is an "employee welfare benefit plan" governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. In pertinent part, the group term life insurance policy provides:

> You may change the beneficiary at any time. Any request to name or change the beneficiary must be in writing on a form acceptable to us and signed by you. . . .
>
> You may also send a request to change the beneficiary to the main office of the policyholder. The change must be made in a manner acceptable to us. . . .

Compl. Ex. D, at 4, ECF 1-4 (emphasis omitted).

In 1990, the decedent married Defendant JoAnn Alexander ("Spouse"), and sometime later he named her as the beneficiary of the policy. In 2008, the parties agreed to separate. On May 22, 2008, the Circuit Court of Tuscola, Michigan, entered a judgment of separate maintenance endorsed as "approved as to form" by both parties which, inter alia, terminated each party's rights in the other's life insurance policies. In pertinent part, the judgment orders:

> Any rights of either party as a named beneficiary or by assignment during or in anticipation of marriage in any policy or contract of life insurance, endowment, or annuity insurance upon the life of the other are extinguished unless specifically preserved by this judgment.

Mot. Summ. J. Ex. 1, at 3, ECF No. 17-1. The remainder of the judgment does not specifically preserve any insurance policies. Thus, with the entry of the judgment, each party's rights in the other's insurance policies were extinguished.

One month to the day after the judgment of separation was entered, on June 22, 2008, the decedent was killed in a motorcycle accident. At the time of his death, the named beneficiary on the decedent's life insurance policy had not been changed. No judgment of divorce had been entered. The decedent's mother, Defendant Linda Sokol, initiated probate proceedings in the Tuscola County Probate Court. The Spouse appeared and asserted that she was entitled to the rights of a surviving spouse, as the parties had not been divorced, and asserted that she was entitled to the proceeds of the life insurance policy, as she was the policy's named beneficiary. On December 15, 2010, the probate court ordered that the insurance policy proceeds, $73,000, to be paid to the estate. Compl. Ex. F, at 2, ECF No. 1-6.

In March 2011, Plaintiff Union Security Insurance Co. filed a complaint in interpleader in this Court, interpleading the decedent's estate and the Spouse and asking the Court to determine which party is entitled to the funds. The Spouse then filed a counterclaim against Plaintiff in April (ECF No. 9), a cross-claim against the estate in May (ECF No. 15). Asserting her claim to the funds, the Spouse argues that not only is she the policy's named beneficiary, but also the decedent's intended beneficiary. She writes: "Faron Alexander was questioned [by several individuals] regarding whether he wished to change beneficiaries from Joann Alexander and he responded that it was his intention that Joann should continue as his Beneficiary after the entry of the Judgment of Separate Maintenance on May 22, 2008." Cross-Cl. ¶ 13.

In June 2011, the estate filed the motion for summary judgment now before the Court, arguing that, pursuant to the judgment of separate maintenance, the Spouse has waived her rights

in the life insurance policy. Conceding that "the proceeds must be paid initially to JoAnn Alexander because of ERISA's requirements," the estate asserts that "once the funds are distributed, ERISA no longer applies, and she must relinquish the funds to the Estate because of the common law waiver she executed in the Judgment of Separate Maintenance." Mot. Summ. J. ¶ 23, ECF No. 17. Opposing the estate's motion, the Spouse attaches depositions of three individuals, each of whom aver that after the judgment of separation the decedent stated that he wished his wife to remain as the beneficiary of the policy.[1] Resp. Summ. J. Ex. A–C, ECF 20.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a

---

[1] As an aside, it should be noted that the decedent's purported remarks referenced in the depositions, although out of court statements ostensibly offered for the truth of the matter asserted, may be considered by the Court. *See Meirthew v. Amore*, 417 Fed. App'x 494, 496 n.2 (6th Cir. 2011) (noting that in summary judgment motions, a party "may offer any relevant and admissible evidence" (citing Fed.R.Civ.P. 56(c)(2))). First, the estate did not object to the statements' admissibility, thus waiving any hearsay objection. Had the estate objected, moreover, the statements would nevertheless likely be admissible as verbal acts with independent legal significance. *See, e.g.*, *Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 798 n.5 (6th Cir. 2002) ("The verbal acts doctrine applies where 'legal consequences flow from the fact that words were said, *e.g.* the words of offer and acceptance which create a contract.' " (quoting *Black's Law Dictionary* 1558 (6th ed. 1990))). That is, the Spouse is offering the statements to establish that, following the judgment of separate maintenance, the decedent re-accepted the insurance contract by re-designating the Spouse as the beneficiary.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**A.**

ERISA requires plan administrators to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). "[T]he Act provides no exemption from this duty when it comes time to pay benefits." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009); *see also Metro. Life Ins. Co. v. Flusty*, 545 F. Supp. 2d 624, 627–28 (E.D. Mich. 2008) ("The law in the Sixth Circuit is clear: the Plan administrator must pay the named beneficiary on an ERISA-regulated plan the plan benefits.").

In *Kennedy*, for example, the decedent named his spouse as the beneficiary of an ERISA-qualified pension plan. 555 U.S. at 288. When the couple divorced two decades later, the divorce decree terminated the wife's rights in the plan. *Id*. at 289. The decedent, however, did not identify a new beneficiary before his death, and after he died, the plan administrator refused the estate's demand for the funds because the former spouse remained the named beneficiary. *Id*. at 288–89. Eventually, the case reached the Supreme Court, where the Court answered "whether a beneficiary's federal common law waiver of plan benefits is effective where that waiver is inconsistent with plan documents." *Id*. at 291. Answering in the negative, the Court held that the waiver contained in the final decree was ineffective as a matter of federal common law, writing: "a federal common law of waiver . . . might obscure a plan administrator's duty to act in accordance with the documents and instruments." *Id*. at 303 (internal quotation marks omitted) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259 (1993)). The Court explained that this simple, bright-line rule — pay the named beneficiary — is designed for "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming

quickly, without the folderol essential under less-certain rules." *Kennedy*, 555 U.S. at 301 (alterations in the original) (quoting *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)).

Crucially, however, the Court in *Kennedy* left open the question of "whether the [e]state could have brought an action in state or federal court against [the former spouse] to obtain the benefits after they were distributed." 555 U.S. at 300 n.10 (citing, inter alia, *Sweebe v. Sweebe*, 712 N.W.2d 708, 712–13 (Mich. 2006)).

In this case, the parties agree that the Spouse is the named beneficiary of the decedent's life insurance policy. *Compare* Mot. Summ. J. ¶ 16, *with* Resp. Summ. J. ¶ 16. The parties also agree — and correctly conclude — that Plaintiff must pay the Spouse the policy proceeds. *Compare* Br. Supp. Summ. J. 8, *with* Br. Opp'n Summ. J. 6–7. *See also Flusty*, 545 F. Supp. 2d at 627–28 (quoted *supra*). The disagreement arises over whether the Spouse must then relinquish the funds to the estate.

**B.**

"ERISA preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan,' with 'State law' being defined to include 'decisions' or 'other State action having the effect of law.' " *Kennedy*, 555 U.S. at 299 (quoting 29 U.S.C. §§ 1144(a), (c)(1)). Thus, ERISA indisputably preempts state law causes of action that challenge a plan beneficiary's right to receive the proceeds of an ERISA plan. The Sixth Circuit, however, holds that ERISA does not preempt state law causes of action that challenge a plan beneficiary's right to retain those same proceeds. *See Central States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000). In *Central States*, the Court wrote:

> In this case, JoAnn Howell seeks to impose a constructive trust on Kenneth Howell's ERISA welfare benefit plan benefits. Kenneth Howell changed the beneficiary designation in accordance with the plan documents. On this issue, our precedents are clear — the beneficiary card controls the person to whom the plan administrator must pay the benefits. However, we hold today that once the benefits have been released to the properly designated beneficiary, the district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires.

*Id*. *see generally* Sarabeth A. Rayho, Note, *Divorcees Turn About in Their Graves as Ex-Spouses Cash in: Codified Constructive Trusts Ensure an Equitable Result Regarding ERISA-Governed Employee Benefit Plans*, 106 Mich. L. Rev. 373, 392–93 (2007) ("Because ERISA requires only that a plan be administered 'in accordance with the documents and instruments governing the plan,' a constructive trust . . . affecting plan proceeds after payment to a plan-designated ex-spouse would not directly conflict with ERISA. As one court explained, 'once the benefits of an ERISA employee welfare benefit plan have been distributed according to the plan documents, ERISA does not preempt the imposition of a constructive trust on those benefits.' ") (footnotes omitted) (quoting *Central States*)).

Consequently, decisions of this district recognize "a fundamental difference between state law causes of action that challenge a plan beneficiary's right to *receive* the proceeds of an ERISA plan and those that seek to challenge a plan beneficiary's right to *keep* the proceeds of an ERISA plan." *Brown v. Wright*, 511 F. Supp. 2d 850, 853 (E.D. Mich. 2007) (emphasis in original). This distinction, although unquestionably in some tension with ERISA's broad preemptive language, has developed as an equitable safety valve in areas traditionally reserved to the states — domestic relations and probate. *See generally Marshall v. Marshall*, 547 U.S. 293, 299 (2006) (noting that "[a]mong longstanding limitations on federal jurisdiction otherwise properly exercised are the so-called 'domestic relations' and 'probate' exceptions"). And, until

the Supreme Court weighs in on the propriety of this distinction, *see Kennedy*, 555 U.S. at 300 n.10 (declining to reach issue), this Court is bound by the Sixth Circuit precedent. *See Central States*, 227 F.3d at 679 (quoted supra).

ERISA preemption is designed, the Supreme Court explains, "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (internal quotation marks omitted) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). The goal, of course, is efficiency — by reducing transaction costs, increased benefit levels are possible. *See Fort Halifax*, 482 U.S. at 10 (1987) (noting that absent preemption, a patchwork of state laws "would produce considerable inefficiencies, which the employer might choose to offset by lowering benefit levels"). Once the administrator processes the claim and disburses the benefits, however, the federal interest in administrative uniformity is achieved. And, once the administrator is out of the equation, the calculus changes. As one commentator has explained:

> Once the proceeds are distributed, the person seeking recovery of the proceeds is no longer seeking a determination of the beneficiary under the plan, but is instead challenging who has the continuing right to retain the proceeds. Such retention challenges, which most often arise out of waivers in divorce decrees or a premarital agreements, are not an area of exclusive federal control nor do they directly affect the relationship among traditional ERISA entities because the proceeds have already been distributed as required by ERISA. To this point, the Michigan Supreme Court stated that, "while a plan administrator is required by ERISA to distribute the proceeds from a plan to a named beneficiary, the named beneficiary can then be found to have waived the right to retain those proceeds." After the proceeds have been distributed, the successful administration of the plan is no longer a concern and Congress's goals of simplicity and efficiency of plan administration are achieved.

Teia Moore, Comment, *When Happily Ever After is Not Ever After, After All: Rectifying the Plan Documents Rule Under ERISA to Benefit the Right Person*, 52 S. Tex. L. Rev. 127, 133–34 (2010) (footnotes omitted) (quoting *Sweebe*, 712 N.W.2d at 714)).

In line with this analysis, numerous decisions of this district hold that the federal preemption is conterminous with the administrator's distribution of the funds to the named beneficiary. Consequently, these decisions hold, whether a named beneficiary who waives her right to life insurance proceeds pursuant to a judgment of separate maintenance or divorce may retain the funds "is a state law issue governed by the Michigan Supreme Court decision in *Sweebe v. Sweebe*." *Metro. Life Ins. Co. v. Flusty*, 545 F. Supp. 2d 624, 628 (E.D. Mich. 2008); *see also Terry v. Metro. Life Ins. Co.*, No. 09-13759, 2010 WL 3805761, at *4 (E.D. Mich. Sept. 23, 2010) ("As in *Sweebe*, the Court finds that the Judgment of Divorce extinguished any right that [the former spouse] may have had to the Plan benefits. Therefore, the Court concludes that principles of equity require the imposition of a constructive trust to prevent an unfair result in this case."); *Francis*, 2006 WL 481672, at *3 ("Plaintiff's attempt to recover the insurance proceeds from Defendant once those proceeds have been distributed by the plan administrator does not 'relate to' the ERISA plan and the Court concludes that Plaintiff's claims are not preempted by federal law.").

*Sweebe*, in turn, establishes that "while a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds." 712 N.W.2d at 712. "Once the proceeds are distributed," the Michigan Supreme Court holds, "the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds." *Id.*; *cf. Holmes v. Holmes*, 760 N.W.2d 300, 307 (Mich. App. 2008) ("A divorce judgment entered upon the settlement of the parties . . . represents a contract, which, if unambiguous, is to be interpreted as a question of law." (internal quotation marks omitted) (quoting *In re Lobaina Estate*, 705 N.W.2d 34 (2005))).

In *Sweebe*, for example, the judgment of divorce provided in pertinent part "that any interest which either of the parties may now have or may have had in any insurance contract or policy, and any other interest in any insurance contract or policy of the other party, shall be *extinguished* . . . ." 712 N.W.2d at 713 (emphasis in original). "Our review of this provision," the court wrote, "indicates that plaintiff clearly and unequivocally waived her right to the plan proceeds." *Id*. "Under Michigan law," the court concluded, "plaintiff validly waived the right to retain the proceeds under the binding judgment of divorce." *Id*.

In this case, the judgment of separation likewise extinguishes the Spouse's rights, providing in pertinent part: "Any rights of either party as a named beneficiary or by assignment during or in anticipation of marriage in any policy or contract of life insurance, endowment, or annuity insurance upon the life of the other are extinguished . . . ." Mot. Summ. J. Ex. 1, at 3. Under Michigan law, the plain language of this provision waives the Spouse's right to retain the proceeds of the decedent's life insurance policy.

The Spouse seeks to distinguish *Sweebe* in three ways. Each, however, is a distinction without a difference. First, the Spouse contends that unlike in *Sweebe*, in this case "[t]he parties did not receive a divorce or dissolution but a separation." Br. Opp'n Summ. J. 1; *see also id*. at 6. Under § 552.101 of the Michigan Compiled Laws, however, judgments for divorce and judgments for separate maintenance are subject to precisely the same legal requirements and default rules. That section provides in pertinent part:

> Each judgment of divorce or judgment of separate maintenance shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the husband in which the wife was named or designated as beneficiary, or to which the wife became entitled by assignment or change of beneficiary during the marriage or in anticipation of marriage. If the judgment of divorce or judgment of separate maintenance does not determine the rights of the wife in and to a policy of life insurance,

> endowment, or annuity, the policy shall be payable to the estate of the husband or to the named beneficiary if the husband so designates. . . .

Mich. Comp. L. § 552.101(2); *see generally* 10 *Michigan Pleading and Practice* § 70:1 (West 2011) (noting that "the Michigan statutes are somewhat unusual in their intermingling of provisions relating to divorce, separate maintenance, and judicial affirmance or nullification of marriages of doubtful validity").

Second, the Spouse argues that *Sweebe* does not control this case's outcome because here the decedent "intentionally and affirmatively left JoAnn Alexander as the beneficiary of all policies of insurance." Br. Opp'n Summ. J. 2; *see also id*. at 3, 5–6. In support, the Spouse cites two cases, *Prudential Insurance Co. of America v. Irvine*, 61 N.W.2d 14 (Mich. 1953), and *Starbuck v. City Bank and Trust Co*., 181 N.W.2d 904 (Mich. 1970). *See* Br. Opp'n Summ. J. 2, 4. Her reliance is misplaced.

In *Irvine*, the court confronted a claim quite similar to the one advanced in this case — the named beneficiary, whose rights in a life insurance policy had been terminated by a judgment of divorce, alleged that the decedent had "intentionally left her as the named beneficiary on the policy certificate and that shortly before his death he had, before witnesses, affirmatively designated her as beneficiary." 61 N.W.2d at 21. The policy at issue provided "Any employee may from time to time while insured hereunder change the beneficiary by a written request signed by the employee and filed with the employer, but such change shall take effect only upon its entry be the employer on the insurance records maintained by it . . . ." *Id*. at 23. The trial court concluded that the policy proceeds should be paid to the named beneficiary because the decedent's "affirmative, unambiguous designation of beneficiary was sufficient." *Id*. at 25. Reversing the trial court, the Michigan Supreme Court held that "where the policy of insurance

provides the method and procedure for changing the designated beneficiary, there must be at least substantial compliance with such provisions to effect the change." *Id*. at 27 (quoting *Dogariu v. Dogariu*, 11 N.W.2d 1, 6 (Mich. 1943)). The court concluded:

> To hold that, without substantial compliance with the provisions of the policy relative to change of beneficiary, an insured by his will alone, could change such beneficiary, would open the door to possible fraud and irregularities and would create uncertainty tending to interfere with the customary practice of prompt payment. We are convinced that in the absence of a showing of substantial compliance with the policy's requirements, the will of the insured, standing alone, should not effect a change of beneficiary.

*Id*. at 28 (quoting 2 *Couch on Insurance* § 308).

In this case, as in *Irvine*, the life insurance policy requires that the designation or change of beneficiary be in a signed writing, with the policy stating in pertinent part:

> You may change the beneficiary at any time. Any request to name or change the beneficiary must be in writing on a form acceptable to us and signed by you. . . .
>
> You may also send a request to change the beneficiary to the main office of the policyholder. The change must be made in a manner acceptable to us. . . .

Compl. Ex. D, at 4 (emphasis omitted). As in *Irvine*, it is undisputed that the decedent did not substantially comply with his insurance policy's procedure for naming or changing a beneficiary. After the Spouse's rights had been terminated pursuant to the judgment of separate maintenance, the decedent did not re-designate her as the beneficiary in writing, much less in a signed writing.

*Starbuck* is similarly unhelpful to the Spouse's case. There, the court confronted a claim quite different to the one put forward in this case — specifically, "Is the naming of a 'contingent beneficiary' in the life insurance policy under the circumstances of this case sufficient to entitled such a contingent beneficiary to take?" 181 N.W.2d at 906. The "circumstances" of that case were these: the decedent named his wife as the primary beneficiary of his life insurance policy, his mother as the contingent beneficiary. *Id*. at 905. Incident to divorce, the wife's rights in the

policy were terminated, however, the decedent failed to designate a new primary beneficiary. *Id*. Following his death, the decedent's estate and his mother both claimed the funds (the wife was not involved in the litigation; she did not dispute that because of the judgment of divorce she had no right to the funds). *Id*. Interpreting the policy, the court awarded the funds to the mother, "hold[ing] that as a matter of contract interpretation a contingent beneficiary will be qualified to receive the proceeds of an insurance policy upon the disqualification of the primary beneficiary unless a provision of the insurance contract requires a different result." *Id*. at 907.

The Spouse focuses not on the court's holding, but its dictum, where in passing the court observed that § 552.101 of the Michigan Compiled Laws

> does not prohibit the husband or the divorce judgment itself from retaining or renaming the wife as the primary beneficiary. It simply requires affirmative action on the part of the court or husband to retain the divorced wife as the primary beneficiary and thus eliminate what could be, and usually appears to be, the inadvertent payment of the life insurance proceeds to a divorced wife.

*Id*. at 906 (citing Mich. Comp. L. § 552.101). Read in isolation, this dictum may be viewed as supporting to the Spouse's argument. But when this statement is read in context, it underscores the flaws of the Spouse's contention. As in *Irvine*, in *Starbuck* the court again emphasized that the party entitled to receive the proceeds of an insurance policy depends on the policy provisions' requirements. Moreover, as established in *Irvine*, affirmative action requires more than "the will of the insured," it requires "substantial compliance with the policy's requirements." *Irvine*, 61 N.W.2d at 28.

Here, as noted above, the policy requires that the designation or change of beneficiary be in a signed writing. The decedent did not re-designate the Spouse in a writing, much less a

signed writing. Because he did not substantially comply with the policy's provisions, the Spouse is not entitled to retain the policy proceeds.

The Spouse makes one further argument on why *Sweebe* does not control in this case — that "Faron by his actions and intention reaffirmed the right of JoAnn to remain as beneficiary. Therefore, JoAnn Alexander cannot be expected to knowingly waive her right to receive benefits established after the Judgment of Separate Maintenance was entered." Br. Opp'n Summ. J. 5. In other words, the Spouse argues that although she waived her rights in the policy pursuant to the judgment of separation, she did not waive them after the she had been re-designated by the decedent. For the reasons set forth above, however, the decedent did not effectively re-designate the Spouse as the beneficiary. As the Spouse cannot establish the predicate for her argument, she cannot establish her conclusion. Although the Spouse is entitled to receive the funds, she is not entitled to retain them.[2] Therefore, the estate is entitled to summary judgment.

**IV.**

Accordingly, it is **ORDERED** that Defendant Linda Sokol's motion for summary judgment (ECF No. 17) is **GRANTED**.

---

[2] As an aside, the Court notes that the Spouse's brief also raises several collateral claims, including, inter alia, that certain "marital property has not yet been accounted for nor divided under the terms of the Judgment of Separation" and that "a QDRO was entered for the payment of $43,500 under the terms of the Judgment of Separation. [The Spouse] only received $26,000 . . . ." Br. Opp'n Summ. J. at 5, 7. These claims, although arising out of the judgment of separation, do not arise with the competing claims on the insurance policy proceeds out of a common nucleus of operative facts. *See Michigan Bell Tel. Co. v. MCIMetro Access Transmission Servs., In*c. 323 F.3d 348, 355 (6th Cir. 2003) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) ("A related claim is one arising from a common nucleus of facts."). "The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that district courts with original jurisdiction of a claim have supplemental jurisdiction over claims that are so related to the claim that provided original jurisdiction that 'they form part of the same case or controversy.' " *Id*. This interpleader case, of course, centers on the narrow issue of who is entitled to the proceeds of a specific life insurance policy. Distribution of the marital estate between the decedent and his spouse far exceeds the particular claim which gives this Court original jurisdiction over the case. The Court lacks jurisdiction to decide the collateral matters raised by the Spouse.

It is further **ORDERED** that Plaintiff, having tendered the insurance policy proceeds to the Clerk of the Court, is discharged from liability to Defendants for the proceeds.

It is further **ORDERED** that a Defendant Linda Sokol, as personal representative of the estate of Faron Alexander, shall timely furnish to the court the information necessary to disburse the funds.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 2, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 2, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS